UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DENISE R. FRASER,<br><br>               Plaintiff,<br><br>   v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS; GREGORY A. BROWN; and THOMAS LOWRY,<br><br>               Defendants. | CASE NO. 11-5273 RJB<br><br>ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION, DISMISSING *QUID PRO QUO* CLAIM, AND REMANDING CASE |

This matter comes before the Court on Plaintiff's Motion for Reconsideration (Dkt. 50) of this Court's Order granting, in part, Defendants' Summary Judgment Motion ("prior order")(Dkt. 49), and the Court's order to show cause why this Court should not decline to exercise supplemental jurisdiction and the case remanded (Dkt. 49). The Court has considered the pleadings filed in support of and in opposition to the motion, the responses to the order to show cause, and the remaining file.

In this case, Plaintiff, a former corrections officer for Defendant Department of Corrections ("DOC"), asserts that she was subjected to a sexual harassment based on the

unwanted attentions of another corrections officer. Plaintiff alleges that she was fired because she spurned his advances. Defendants assert that she violated several DOC policies when she entered the secured housing unit without authorization, and delivered contraband to a family member. DOC alleges it decided, for safety reasons, it had to let her go from her probationary position.

Plaintiff's pending motion for reconsideration should be granted in so far as it seeks a decision on the Defendants' motion to summarily dismiss her *quid pro quo* sexual discrimination claim and/or clarification of the prior order. Plaintiff's federal claim for *quid pro quo* sexual discrimination should be dismissed because Plaintiff failed show that her alleged harasser was her supervisor. Further, even if he was her supervisor, she failed to point to any evidence that he "explicitly or implicitly conditioned a job, a job benefit, or the absence of a job detriment," upon her "acceptance of sexual conduct." *Craig v. M & O Agencies, Inc.,* 496 F.3d 1047, 1054 (9th Cir. 2007). Lastly, the Court should decline jurisdiction on Plaintiff's remaining state law claims, and this case should be remanded.

## I. FACTS AND PROCEDURAL HISTORY

### A. RELEVANT FACTS

The facts and procedural history are in this Court's March 6, 2012, Order on Motion for Summary Judgment (Dkt. 49, at 1-15) and are adopted here by reference. In the prior order, the Court found that Plaintiff's Title VII claim, asserted only against DOC, for hostile work environment should be dismissed. Dkt. 49. It found that Plaintiff failed show that her alleged harasser's behavior could be imputed to the DOC. *Id.* The prior order later states that all Plaintiff's federal claims are dismissed, and so ordered the parties, on or before March 16, 2012, to show cause why, if any they have, why there matter should not be remanded to Thurston

County, Washington Superior Court. *Id.*

Plaintiff argues, in the instant motion for Reconsideration, that the Court failed to address her *quid pro quo* discrimination claim, asserted under Title VII, against the DOC. Dkt. 50. Plaintiff argues that the Court needs to make a ruling on her *quid pro quo* claim. *Id.*

Defendants respond and argue that even though the Court did not specifically use the term *quid pro quo,* it did the analysis needed to properly dismiss the claim. Dkt. 52. Defendants argue that the claim should be dismissed. *Id.*

This opinion will first address the motion for reconsideration and issue a decision on Plaintiff's *quid pro quo* claim, and then discussion whether the Court will decline jurisdiction on the state law claims.

## II. DISCUSSION

### A. MOTION FOR RECONSIDERATION AND *QUID PRO QUO* CLAIM

Western District of Washington Local Rule 7(h)(1) provides:

> (1) Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence.
> (2) A motion for reconsideration shall . . .point out with specificity the matters which the movant believes were overlooked or misapprehended by the court, any new matters being brought to the court's attention for the first time, and the particular modifications being sought in the court's prior ruling. Failure to comply with this subsection may be grounds for denial of the motion.
> (3) No Response to a motion for reconsideration shall be filed unless requested by the court. No motion for reconsideration will be granted without such a request.

Plaintiff's motion for reconsideration, in so far as it seeks a ruling on her *quid pro quo* harassment claim, should be granted. On further consideration, Defendants' motion for summary judgment on Plaintiff's *quid pro quo* harassment claim should granted. Plaintiff's *quid*

*pro quo* harassment claim, asserted against solely DOC pursuant to Title VII, should be dismissed.

As stated in the prior order, under Title VII, an employer may not discriminate against a person with respect to her "terms, conditions, or privileges of employment" because of her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

In *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the United States Supreme Court outlined the principles governing employer liability for sexual harassment. *Craig v. M & O Agencies, Inc.,* 496 F.3d 1047, 1054 (9th Cir. 2007). Each of these cases "involved the harassment of an employee by her direct supervisor." *Id.* According to the *Craig* Court, the Supreme Court "divided cases in which a supervisor harassed a subordinate into two categories." *Id.* The first category, called "tangible employment action" or "*quid-pro-quo*" harassment, "involves situations where 'a supervisor exercising his authority to make critical employment decisions on behalf of his employer takes a sufficiently concrete action with respect to an employee.'" *Id.* (*quoting Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir.2003)). In this category of situations, "the employer may be held vicariously liable under traditional agency law." *Id*. (*quoting Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir.2003) and *citing Ellerth*, 524 U.S. at 760-65). "In the second category, which are known as 'hostile environment' claims, the Court tempered the agency principles by allowing the employer to assert an affirmative defense if the employer "is able to establish that it acted reasonably and that its employee acted unreasonably." *Id.*

The prior order specifically found that Plaintiff failed to point to sufficient facts in the record to find that the DOC was liable for CO Brown's conduct under a theory of hostile work environment, that is, under the second category of employer liability pursuant to Title VII. Dkt.

49. Plaintiff argues that her former employer, DOC, is liable for sexual harassment pursuant to Title VII under a *quid pro quo* harassment theory, the first category of employer liability. Dkt. 50. Plaintiff's claim should be dismissed because, as stated in the prior order, Plaintiff failed to allege sufficient facts from which a jury could conclude that CO Brown was her supervisor. Further, Plaintiff's claim should be dismissed because even if CO Brown was her supervisor, she failed to show that he "explicitly or implicitly conditioned a job, a job benefit, or the absence of a job detriment, upon [her] acceptance of sexual conduct." *Craig,* at 1054.

1. CO Brown Plaintiff's Supervisor?

The prior order held that Plaintiff had failed to show facts in dispute from which a jury could conclude that CO Brown was her supervisor. This finding is equally relevant to her claim for *quid pro quo* harassment. *Craig,* at 1054 ("*quid-pro-quo*" harassment, "involves situations where 'a supervisor exercising his authority to make critical employment decisions on behalf of his employer takes a sufficiently concrete action with respect to an employee). The prior order stated:

> "An employer is vicariously liable for actions by a supervisor who has immediate (or successively higher) authority over the employee." *Dawson,* at 940 (*internal quotations omitted*). The first issue here, then, is whether CO Brown was Plaintiff's supervisor for purposes of a hostile environment claim. "This distinction is not dependent upon job titles or formal structures within the workplace, but rather upon whether a supervisor has the authority to demand obedience from an employee." *Dawson*, at 940.
> Plaintiff has failed to show sufficient evidence that CO Brown was her supervisor. Plaintiff testified that her supervisor was Sgt. Killingsworth. Dkt. 48-2, at 2. CO Brown was a corrections officer, like Plaintiff. There is no evidence that he had the authority to "demand obedience" from her. He did not control her work assignments or her schedule. He did not have the authority to hire, fire, or take other employment action against her.
> Plaintiff argues that even though CO Brown was not formally her supervisor, as a non-probationary corrections officer, he could have played a role in completion of her COACH training plan requirements, making him a "defacto" supervisor. Dkt. 41. It is undisputed that he did not, however, fill out any of her COACH forms. She worked with several other staff members to complete the

> COACH tasks.
>
> Plaintiff states that he told her he would put in a "good word" for her. Dkt. 43-6, at 5. There is no evidence to whom he was going to relay this information. This sort of general statement is not sufficient to conclude that he was her supervisor or that he had influence with her supervisors. Plaintiff points out that it was "widely believed" that CO Brown had "unique influence" on Lt. Dolman. Dkt. 41. Even if true, which both Brown and Dolman deny, (Dkt. 34, at 5) Plaintiff fails to point to the relevance of this connection. She does not assert that Lt. Dolman was aware of any of CO Brown's sexually motivated actions, or that CO Brown in any manner threatened to attempt to sway Lt. Dolman if she did not comply with his desire to have a relationship. Other than be her putative supervisor after she was sent home during the investigation of the SHU incident, Lt. Dolman did not play a role in her separation from her employment. He did not conduct the investigation, or contribute anything meaningful to it.

Dkt. 49, at 18-19 (*citing Dawson v. Entek, Intern.*, 630 F.3d 928, 940 (9th Cir. 2011)).

Plaintiff has not shown "a manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to the court's attention earlier with reasonable diligence" regarding the prior order's holding on whether there was sufficient evidence to support her theory that CO Brown was her supervisor. Plaintiff, in her Motion for Reconsideration, argues that the Court's citation of *Dawson* was in error because it was not a *quid-pro-quo* "fact pattern or claim." Dkt. 50, at 3, n.1. Plaintiff's argument is without merit. In *Dawson*, the plaintiff made a claim under Title VII for hostile work environment. The defendant argued that the management team had no notice of the alleged harassment. The *Dawson* Court's discussion of employer liability in Title VII cases points out the first key distinction to be decided in these cases: the employer's liability when the alleged harasser was a supervisor and the employer's liability when the alleged harasser was a co-worker. *Dawson,* at 940 (noting that there are two categories of liability when the harasser is a supervisor, and that when harassment by co-workers is at issue, the employer's conduct is reviewed for negligence). To the extent that Plaintiff argues that the characteristics a Court looks to in determining if someone is a supervisor for purposes of Title VII liability differs based on whether the claim asserted is *quid-pro-quo*"

harassment or hostile environment, Plaintiff fails to cite any authority for this proposition. Her *quid pro quo* harassment claim should be dismissed because she failed to show evidence supporting her contention that CO Brown was her supervisor, and the prior order's finding on this issue should be affirmed.

### 2. Conditioned Job, Benefit or Detriment on Acceptance of Sexual Conduct

Even if CO Brown was her supervisor, her claim should still be dismissed. "To prove actionable harassment under a *quid pro quo* or 'tangible employment action' theory," Plaintiff must show, in her prima facie case, that CO Brown "explicitly or implicitly conditioned a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Craig,* at 1054.

Plaintiff fails to point to any evidence in the record that CO Brown explicitly conditioned her employment, a job benefit, or the absence of a job detriment on her acceptance of his sexual overtures. Plaintiff has produced no evidence connecting a discussion of her job duties with CO Brown's request that they start a romantic relationship. *Holly D.*, at 1175. There is no evidence that CO Brown mentioned any potential change in her employment status during any discussion regarding her participation in sexual acts with him. *Id.*

To the extent that Plaintiff argues that he implicitly conditioned her job/advancements on engaging in a romantic relationship with him, her claim should be dismissed. Implicit *quid pro quo* harassment occurs where a "supervisor's words or conduct would communicate to a reasonable woman in the employee's position" that participation sexual acts is a condition of employment. *Holly D.,* at 1173. In her pleadings she points out that he said that he would "put in a good word for her." Her testimony on that issue is as follows:

Q. Did Correctional Officer Brown ever indicate that he would put in a good word

```
              for you?
              A. Yes.
              Q. What did he say?
              A. He said he'd put in a good word for me.
              Q. With whom?
              A. He didn't say.
              Q. Did any other correctional officer say they would put in a good word for you?
              A. No.
              Q. Did you have any conversation with Greg Brown at that time regarding what
              he meant by that or who he would put in a good word to? He was a fellow
              correctional officer like you, correct?
              A. Correct.
              Q. Did you ask him to explain?
              A. No.
              Q. Did Mr. Brown ever fill out any of your COACH feedback reports?
              A. Not that I know of.
```

Dkt. 43-6, at 5. This sort of generalized statement is insufficient to conclude that CO Brown was implicitly conditioning a job benefit on her acquiescing to romantic relationship with him. Plaintiff fails to show that there was any more to it than just that statement. CO Brown's comment, "I'll put in a good word for you," "is merely a 'vague and unsupported allegation,'" which is "insufficient to cause a reasonable woman to believe that retaining her job was conditioned on having sex with her supervisor." *Id*. (*quoting Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir.2003)). Plaintiff further argues that she felt that CO Brown had influence over Lt. Dolman. In discussing whether she had pointed to sufficient evidence from which a jury could find that CO Brown was her supervisor, the prior order stated:

> Plaintiff points out that it was "widely believed" that CO Brown had "unique influence" on Lt. Dolman. Dkt. 41. Even if true, which both Brown and Dolman deny, (Dkt. 34, at 5) Plaintiff fails to point to the relevance of this connection. She does not assert that Lt. Dolman was aware of any of CO Brown's sexually motivated actions, or that CO Brown in any manner threatened to attempt to sway Lt. Dolman if she did not comply with his desire to have a relationship. Other than be her putative supervisor after she was sent home during the investigation of the SHU incident, Lt. Dolman did not play a role in her separation from her employment. He did not conduct the investigation, or contribute anything meaningful to it.

Dkt. 18, at 18-19. Other than this vague and unsupported allegation that CO Brown had "influence" with a member of the management team who did not supervise Plaintiff until after she was placed on leave for violating DOC policies, she "has presented no evidence that would cause a reasonable woman in her position to believe that [CO Brown] suggested, directly or indirectly, the existence of a connection between her job security and his requests for sex." *Holly D.,* at 1176. To the extent that Plaintiff argues that CO Brown played an improper role in her termination as a result of her spurning him, she has failed to point to any evidence connecting the two events. As stated in the prior order:

> [CO Brown's] role in her termination was, at best, that of a witness. It is not disputed that after she left the SHU, CO Lowery called the Olympic Unit to ask if they had sent her over with mail, and CO Brown said "no." (She even acknowledges that she did not tell CO Brown she was going to take the mail over.) Plaintiff points out that CO Brown "directed" CO Lowery to tell his supervisor about the incident. However, it is undisputed that these two men were peers, so CO Brown could not "direct" CO Lowery to do anything.

Dkt. 49, at 19.

Plaintiff asserted that after she made it clear that she did not want a "romantic relationship with him, his demeanor toward [her] changed." Dkt. 42, at 3. She states that he became "very distant and childish." Dkt. 42, at 3. These "unsubstantiated assertions" are vague and general in manner, and so are "not sufficient to overcome the motion for summary judgment." *Holly D.,* at 1176.

Defendants' motion to summarily dismiss this claim should be granted. Plaintiff's *quid pro quo* harassment claim should be dismissed.

**B. STATE LAW CLAIMS**

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a state law claims if (1) the claims raise novel or complex issues of state law,

(2) the state claims substantially predominate over the claim which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc*., 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations omitted*).

Here, two of the four conditions in § 1367(c) are present. At this stage in the litigation, all Plaintiff's federal claims are dismissed by this order. Accordingly, this Court has "dismissed all claims over which it has original jurisdiction," and so has discretion to decline to exercise supplemental jurisdiction over the state law claims under § 1367(c)(3). Moreover, the remaining state claims "raise novel or complex issues of state law" under § 1367(c)(1) - determinations for which the state court is uniquely suited. Because state courts have a strong interest in enforcing their own laws, *See Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 352 (1988), the value of comity is served by this Court declining jurisdiction. Further, the values of economy, convenience, and fairness may well be served by this Court's declining to exercise supplemental jurisdiction. *See Acri* at 1001. This case should be remanded to Thurston County Superior Court.

### III. ORDER

Therefore, it is hereby **ORDERED** that

- Plaintiff's Motion for Reconsideration (Dkt. 50) **IS GRANTED** to the extent she seeks a ruling on Defendants' motion for summary judgment on her *quid pro quo* harassment claim, asserted pursuant to Title VII;

- Defendants' Motion for Summary Judgment (Dkt. 26) **IS GRANTED** as to Plaintiff's federal claim for *quid pro quo* sexual harassment, and that claim is **DISMISSED WITH PREJUDICE**; and
- The Court declines to exercise supplemental jurisdiction over the remaining state law claims. This case is **REMANDED** to Thurston County Superior Court.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 26th day of March, 2012.

_____
ROBERT J. BRYAN
United States District Judge

ORDER ON PLAINTIFF'S MOTION FOR
RECONSIDERATION, DISMISSING QUID PRO
QUO CLAIM, AND REMANDING CASE- 11